Case 2:21-cv-00010-OEM-JMW   Document 27   Filed 01/28/22   Page 1 of 19 PageID #: 194

FILED
CLERK

1/28/2022 3:37 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANNE SEPAR,

               Plaintiff,

       -against-

COUNTY OF NASSAU and NASSAU COUNTY
DEPARTMENT OF SOCIAL SERVICES,

              Defendants.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
21-CV-00010 (DRH) (JMW)

**Paul Andrew Bartels**
**Lauren Ruth Reznick**
Bell Law Group, PLLC
100 Quentin Roosevelt Boulevard, Suite 208
Garden City, NY 11530
*For Plaintiff Anne Separ*

**Howard Marc Miller**
**Jacqueline Giordano**
Bond, Schoeneck & King PLLC
1010 Franklin Avenue, Suite 200
Garden City, NY 11530
*For Defendants County of Nassau and Nassau*
*County Department of Social Services*

**Jennean R. Rogers**
Suffolk County Department of Law
100 Veterans Memorial Highway
Hauppauge, NY 11788
*For Defendant County of Nassau and Nassau*
*County Department of Social Services*

**WICKS,** Magistrate Judge:

       This lawsuit is the latest chapter in Plaintiff Anne Separ's prolonged struggle against Defendants County of Nassau and Nassau County Department of Social Services over repeated allegations of discriminatory conduct. Plaintiff, a sixty-eight-year-old female civil servant, commenced this action—which, according to the amended complaint, is her fifth brought against Defendants since 1997—alleging

that Defendants discriminated against her based on her age and disability and retaliated against her for complaining about that discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law § 290 *et seq*.

Before the Court, on referral from the Honorable Denis R. Hurley, is Defendants' motion to dismiss the amended complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes the motion. For the reasons set forth below, the undersigned respectfully recommends that Defendants' motion be granted in part and denied in part.

## I. FACTUAL BACKGROUND

The following allegations, drawn from Plaintiff's amended complaint, are presumed true for the purposes of the motion to dismiss. Plaintiff is a sixty-eight-year-old female who has worked for Defendants since 1987. (DE 14 at 5.) She began her employment as a clerk-typist and, due to her stellar job performance, was promoted to Child Support Investigator ("CSI") I in 1989 and then to CSI II in 1991. (*Id.*) Plaintiff received a breast cancer diagnosis in 1996, prompting Defendants to initiate a practice of discrimination against Plaintiff based on the diagnosis. (*Id.* at 1.) This discriminatory conduct included denying Plaintiff promotions to CSI III and transferring her to an unsafe building with high levels of asbestos and carcinogens. (*Id.* at 5–6.) As a result, Plaintiff sued Defendants four times, prevailing twice at trial and settling the other actions. (*Id.*) The most recent of those actions culminated in an August 2015 jury verdict in Plaintiff's favor. (*Id.* at 6.)

Despite Plaintiff's repeated legal action, Defendants continued to overlook her for CSI III position openings throughout 2015 and 2016. (*Id.* at 7.) Plaintiff then filed an Equal Employment Opportunity Commission ("EEOC") charge in 2017 based on the denied promotion but was ultimately promoted to CSI III in January 2018. (*Id.*) Despite achieving the title of CSI III, however, Plaintiff was only promoted to Grade 13, Step 7, which was seven steps lower in position than what she would have realized if promoted in 2008. (*Id.*) In turn, Plaintiff experienced "a significant salary decrease" as a result of the delayed promotion, so much so that Plaintiff was the lowest paid CSI III in Nassau County despite her seniority.

2

(*Id.*)  Defendants paid younger, non-disabled CSI IIIs—none of whom had commenced legal action against Defendants—higher salaries than Plaintiff.  (*Id.*)

In May 2018, Plaintiff's cancer returned, requiring her to undergo surgeries in August and October 2018, both of which Defendants were aware of.  (*Id.* at 8.)  In the midst of these surgeries, Plaintiff's direct supervisor encouraged her to apply for the vacant Assistant Director ("AD") position.  (*Id.*)  Defendant denied Plaintiff an interview, though, and explained "that she needed to have been in her position as a CSI III for seven . . . years to qualify for" the AD position.  (*Id.*)  The Department of Social Services Commissioner John Imhof later informed Plaintiff that employees did not have to be CSI IIIs for seven years to apply to the AD position.  (*Id.*)

On March 16, 2019, Plaintiff took the civil service test for the AD position.  (*Id.* at 9.)  On November 15, 2019, Plaintiff learned that she received the third-highest score on the exam and was therefore third on the promotion list for the AD position.  (*Id.*)  Defendants, however, declined to interview Plaintiff for the position, and instead filled the position with Deborah Parker, a fifty-five-year-old, non-disabled candidate with no history of legal action against Defendants.  (*Id.*)  Although Ms. Parker received a hundred percent—the top grade—on the civil service test (DE 26-2), Plaintiff alleges that she "was and is significantly less qualified for the AD Position than" Plaintiff (DE 14 at 9).  Specifically, Plaintiff avers that she "had more experience in the [d]epartment, had longer tenure, was more familiar with the [d]epartment's staff and employees[,] had better knowledge of the [d]epartment's policies and programs[,] [and] possesses superior leadership and qualifications than Ms. Parker."  (*Id.*)  The decision to not hire Plaintiff was made, in part, by Department of Social Services Deputy Commissioner Paul F. Broderick, who had previously testified at Plaintiff's 2011 trial against Defendants which concerned discrimination based on Plaintiff's diagnosis of breast cancer.  (*Id.* at 9–10.)

Following their decision to deny Plaintiff's promotion to the AD position, Defendants engaged in a number of additional "adverse acts" against Plaintiff.  (*Id.* at 10.)  Specifically, on May 24, 2019, Plaintiff and her unit—a group of employees all over the age of forty—were "reassigned and demoted to a previously disbanded unit" and were replaced with less experienced employees under the age of forty.  (*Id.*)  In April

3

and May of 2020, all CSI III's worked overtime except for Plaintiff, despite her requests to do so. (*Id.*) And finally, in June 2020, Defendants "moved Plaintiff to a more hazardous location . . . for no reason. (*Id.*) Defendants denied Plaintiff's request to return to her former location, despite the request being for medical reasons. (*Id.*)

As relevant here, Plaintiff filed an EEOC charge against Defendants on May 7, 2020. (DE 14-1.) The EEOC charge alleges that Defendants discriminated against Plaintiff between June 1997 and December 15, 2019 and provides factual allegations akin to the above. (*Id.*) Absent from Plaintiff's EEOC charge, however, is any allegation regarding Plaintiff's unheeded requests for overtime in April and May of 2020. (*Id.*)

## II. PROCEDURAL HISTORY

Plaintiff commenced this action by filing a complaint on January 3, 2021. (DE 1.) Plaintiff then filed an amended complaint as a matter of course on April 26, 2021. (DE 14.) On June 17, 2021, the undersigned granted Defendants' unopposed motion to stay discovery pending the outcome of Defendants' motion to dismiss. (DE 20; *see Separ v. Cnty. of Nassau*, 21-CV-00010 (DRH) (JMW), 2021 WL 2474263 (E.D.N.Y. June 17, 2021).) Defendants filed the present motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on September 8, 2021. (DE 26.) The Honorable Denis R. Hurley then referred the present motion to the undersigned for a Report and Recommendation on September 9, 2021. (Electronic Order dated Sept. 9, 2021.)

## III.    LEGAL STANDARD UNDER RULE 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true,

4

"drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). That tenet, however, does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. More is required.

Where, as here, a case involves allegations of discriminatory conduct, a motion to dismiss must be examined through a somewhat modified lens. In *Littlejohn v. City of New York*, the Second Circuit provided guidance on the motion to dismiss standard applicable to such cases, keeping in place the plausibility requirement of *Iqbal* and *Twombly* but making clear that, to survive a motion to dismiss, a plaintiff alleging discriminatory conduct "need only give plausible support to a minimal inference of discriminatory motivation" rather than "give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination." 795 F.3d 297, 311 (2d Cir. 2015). This standard conforms to the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) framework, which, in short, protects plaintiffs in discrimination actions from early-stage dismissal by relaxing the requirements of a *prima facie* case while increasing the requirements as the case progresses to trial. *Littlejohn*, 795 F.3d at 307 (discussing the *McDonnell Douglas* framework). In other words, *Littlejohn* held that "[t]he facts alleged [in a discrimination lawsuit] must give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of [such a suit]," *i.e.*, plausible support to a minimal inference of discriminatory motivation. *Id.* at 311. The Court is therefore guided by *Littlejohn*, as well as subsequent cases interpreting *Littlejohn*, in assessing Plaintiff's complaint.

Before turning to the parties' substantive arguments, the Court must first address whether certain documents extraneous to the amended complaint may be considered here. In determining the adequacy of a claim under Rule 12(b)(6), a court is generally limited to "facts stated on the face of the complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). Courts may, however, consider extrinsic documents on a motion to dismiss if the material is integral to the complaint. *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019). For a document to be "integral" to the complaint, the pleading must "'rel[y] heavily upon its terms and effect.'" *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

5

While courts must accept the facts as alleged in the complaint, if "the [extrinsic] documents contradict the allegations of a plaintiff's complaint, the documents control and the [c]ourt need not accept as true the allegations in the complaint." *Cohen v. Cap. One Funding, LLC*, 489 F. Supp. 3d 33, 44 (E.D.N.Y. 2020) (internal quotation marks and citations omitted).

In support of its motion to dismiss, Defendants have submitted the Affidavit of Howard M. Miller, appending as Exhibit A the Suffolk County Civil Service Commission's eligibility list for the AD position. (DE 26-1; DE 26-2). The eligibility list displays the scores of those who sat for the civil service exam, including both Plaintiff and Ms. Parker. (DE 26-2.) Although the amended complaint does not feature the eligibility list, the Court concludes that it is incorporated by reference into the amended complaint based on Plaintiff's heavy reliance on the results of the civil service exam and her place on the promotional list for the AD position. (*See, e.g.*, DE 14 at 9 ("[Plaintiff] was informed that she had the third highest score on the exam, and was third on the *promotional list* for the AD position.") (emphasis added); *compare Cohen* 282 F.3d at 46 (incorporating documents into complaint that "form[ed] the backbone" of [p]laintiff's allegations").) Therefore, the Court will consider the eligibility list in its analysis below.

## IV.    DISCUSSION

*Timeliness*

"*For wine, timing is critical.  The same is true for causes of action.*"[1]

Defendants' initial contention is that Plaintiff's federal ADEA and ADA discrimination causes of action that accrued prior to July 13, 2019 should be dismissed as time-barred. ADEA and ADA claims are timely only if the plaintiff files an EEOC discrimination claim within 300 days of the alleged discriminatory conduct. *Santana v. Mount Vernon City Sch. Dist./Bd. of Ed.*, No. 20-cv-3212 (NSR), 2021 WL 4523770, at *7 (S.D.N.Y. Sept. 30, 2021) (citing *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325–29 (2d Cir. 1999); *Harris v. City of N.Y.*, 186 F.3d 243, 247–48 (2d Cir. 1999)). Each alleged discrete discriminatory act "gives rise to a freestanding [federal] claim with its own filing deadline." *Chin v. Port Auth. of N.Y. &*

---

[1] *Koch*, 699 F.3d at 144.

6

*N.J.*, 685 F.3d 135, 157 (2d Cir. 2012). Thus, claims grounded in discrete acts—such as termination, failure to promote, denial of transfer, or refusal to hire—should be dismissed as untimely even if they occurred prior to the 300-day period despite being related to acts that occurred within that period. *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019).

Here, many of Plaintiff's causes of action are time-barred. Plaintiff's multiple claims of failure to promote are properly recognized as separate acts. Thus, such claims qualify as freestanding federal claims, each with its own filing deadline. Plaintiff alleges that she filed an EEOC discrimination complaint on May 8, 2020. (DE 14 at 3.) Therefore, any federal cause of action that accrued prior to July 13, 2019—*i.e.*, 300-days before Plaintiff's filing of the EEOC complaint—is untimely and subject to dismissal. *See Cruz v. City of N.Y.*, 21cv1999 (DLC), 2021 WL 5605139, at *5 (S.D.N.Y. Nov. 30, 2021) (dismissing all federal claims based on discriminatory and retaliatory conduct as time-barred for falling outside of the 300-day EEOC window). Plaintiff half-heartedly concedes that a portion of her allegations fall outside of the limitations period, yet inexplicably asserts that any claim accruing from January 2018 on is timely. (DE 26-4 at 12.) Plaintiff offers no explanation as to how she arrived at this date. In any event, January 2018 falls well outside of the 300-day period, and therefore does not serve as a watermark for timeliness. Plaintiff's federal claims accruing prior to July 13, 2019—including her allegations regarding being promoted to Grade 13, Step 4 while being paid less than other CSIIIs in January 2018 and her alleged reassignment and demotion in May 2019—are thus time-barred, warranting dismissal. (*See* DE 14 at 7, 10.)

Accordingly, the undersigned respectfully recommends that Defendant's motion be granted as to each of Plaintiff's federal causes of action accruing prior to July 13, 2019. Because Plaintiff cannot cure these procedural deficiencies, the undersigned additionally recommends that Plaintiff be denied leave to replead these claims. *See Ying Li v. City of N.Y.*, 246 F. Supp. 3d 578, 646 (E.D.N.Y. 2017) ("Although it is the usual practice upon granting a motion to dismiss to allow leave to replead, such leave should be denied where the proposed amendment would be futile.") (internal quotation marks and citations omitted).

*Overtime Claims*

Defendants next move to dismiss Plaintiff's federal overtime claims as unexhausted because Plaintiff did not file an EEOC charge asserting those claims. In response, Plaintiff asserts that her EEOC charge sufficiently included her overtime claims.

As a precondition to filing ADEA and ADA claims in federal court, plaintiffs generally must exhaust their administrative remedies with the EEOC. *See Hamzik v. Off. for People with Dev. Disabilities*, 859 F. Supp. 2d 265, 277 (N.D.N.Y. 2012) (citations omitted). Despite failing to file an EEOC charge as to certain claims, a plaintiff may nevertheless bring such claims in federal court if they are "reasonably related" to the claims that were brought before the EEOC. *See Tanvir v. N.Y.C. Health & Hospitals Corp.*, 480 F. App'x 620, 621 (2d Cir. 2012) ("[A] claim that was not presented to the EEOC may still be pursued where the claim is 'reasonably related' to the claims that were brought before the agency.") (summary order). Relevant here, "[a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Boyar v. Yellen*, 21-507, 2022 WL 120356, at *2 (2d Cir. Jan. 13, 2022) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359–60 (2d Cir. 2001)). In making this determination, "the focus should be on the factual allegations made in the [EEOC] charge itself" and on whether those allegations "gave the [EEOC] 'adequate notice to investigate'" the claims asserted in federal court. *Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (quoting *Deravin v. Kerik*, 335 F.3d 195, 201–02 (2d Cir. 2003)).

A review of the EEOC charge makes clear that Plaintiff's overtime claims are not reasonably related to those raised before the EEOC. The EEOC charge contains a lengthy missive which focuses almost solely on Defendants' alleged failure to promote Plaintiff during the relevant time period. The charge features allegations that Defendants overlooked Plaintiff for the AD position in April 2018; that Defendants chose a younger, less qualified candidate—Ms. Parker—for the AD position in March 2019; and that Defendants reassigned and demoted Plaintiff's unit in May 2019. Conspicuously absent from these allegations is any mention of a request for overtime or Defendants' refusal to grant Plaintiff overtime. The

EEOC charge stands in stark contrast with the amended complaint, which plainly asserts that "[i]n April and May 2020, all CSI III's worked overtime except for [Plaintiff], despite her requests for overtime." (DE 14 at 10.) Contrary to her contentions, Plaintiff's assertion that her EEOC charge allegation stating that she was "treated as a second-class citizen due to her age, disability, and prior good faith opposition to [Defendants'] discriminatory employment practices" is far too generalized to have put the EEOC on notice of her overtime claims.

Thus, because the EEOC charge did not give the agency adequate notice to investigate Plaintiff's overtime claims, such claims are not reasonably related to Plaintiff's promotion claims that she did alert the EEOC to.[2] As such, Plaintiff's federal overtime claims are barred for failure to exhaust her administrative remedies. Because, as above, Plaintiff cannot cure these procedural deficiencies, the undersigned additionally recommends that Plaintiff be denied leave to replead her overtime claims. *See Ying Li*, 246 F. Supp. 3d at 646.

***Failure to Promote***

"When alleging age discrimination under the ADEA, 'a plaintiff . . . must allege that "age was the 'but-for' cause of the employer's adverse action."'" *James v. Borough of Manhattan Cmty. Coll.*, 20-cv-10565 (LJL), 2021 WL 5567848, at *7 (S.D.N.Y. Nov. 29, 2021) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015)). Similarly, a plaintiff alleging disability discrimination under the ADA "must demonstrate that she applied for an available position for which she was qualified but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Holcombe v. U.S. Airways Grp., Inc.*, 976 F. Supp. 2d 326, 346 (E.D.N.Y 2013) (internal quotation marks and citation omitted). As noted above, a plaintiff's task at the motion to dismiss stage is to "give plausible support to a

---

[2] In addition to her argument regarding the adequacy of the EEOC charge in relation to her overtime claims, Plaintiff tacitly argues that Defendants have not met their burden of proof of establishing the affirmative defense of failure to exhaust. (DE 26-4 at 12.) The burden of proof does indeed fall on Defendants to establish Plaintiff's failure to exhaust. *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018). However, here, unlike in *Hardaway*—where the district court *sua sponte* dismissed plaintiff's Title VII complaint for failure to exhaust—Defendants carried their burden by pointing to the EEOC charge—submitted by Plaintiff—to establish its failure to exhaust defense. Plaintiff's argument thus holds no water to the extent that it suggests Defendants have not established Plaintiff's failure to exhaust.

minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311. "Circumstances that may 'give rise to an inference of discriminatory motive' include . . . 'preferential treatment given to employees outside the protected class.'" *Murtha v. N.Y. State Gaming Comm'n*, No. 17 Civ. 10040 (NSR), 2019 WL 4450687, at *6 (S.D.N.Y. Sept. 17, 2019) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996)). "A plaintiff attempting to 'show that the employer treated her "less favorably than a similarly situated employee outside [her] protected group . . . must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself."'" *James*, 2021 WL 5567848 at *5 (quoting *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)).

Plaintiff has failed to plausibly allege that she was discriminated against based on her age and/or disability when she was not chosen for the AD position after taking the civil service test on March 16, 2019. Plaintiff alleges that Ms. Parker—who Defendants elevated to the AD position instead of Plaintiff—"was and is significantly less qualified for the AD position than [Plaintiff]" because Plaintiff "had more experience in the [d]epartment, had longer tenure, was more familiar with the [d]epartment's staff and employees[,] . . . had better knowledge of the [d]epartment's policies and programs[,] . . . [and] possesses superior leadership skills and qualifications than [those of] Ms. Parker." (DE 14 at 9.) As a result, Plaintiff alleges that she "was clearly denied the promotion on the basis of age [and] disability." (*Id.* at 10.)

These allegations, however, are belied by the results of the civil service exam in which Ms. Parker yielded the top score after receiving a one hundred percent and in which Plaintiff tied for the third-best score after receiving an eighty-five percent. (DE 26-6.) Because Plaintiff's allegations contradict the evidence contained in the civil service exam results, the documents control, and the Court need not accept Plaintiff's allegations regarding her superior qualifications as true. *Cohen*, 489 F. Supp. 3d at 44. Indeed, the civil service exam results "provide a more plausible explanation for [Defendants'] decision not to promote [Plaintiff] than animus based upon" age or disability. *Kajoshaj v. N.Y.C. Dep't of Educ.*, 543 F. App'x 11, 14 (2d Cir. 2013) (citing *Iqbal*, 556 at 681) (summary order). Because the civil service exam results contradict Plaintiff's conclusory allegations about "significantly" more qualified than Ms. Parker,

10

the Court need not consider those allegations in determining the adequacy of the pleadings. *Cohen*, 489 F. Supp. 3d at 44**.**

Moreover, absent from the amended complaint is any additional information about Ms. Parker for the Court to assess whether her professional background is comparable to Plaintiff's—including allegations of the length of *Ms. Parker's* tenure, *Ms. Parker's* familiarity with department policy, processes, and personnel, and so forth. *Cf. Warbuton v. John Jay Coll. of Crim. Just. of the City Univ. of N.Y.*, 14-CV-9170 (JPO), 2016 WL 3748485, at *4 (S.D.N.Y. July 7, 2016) (dismissing racial discrimination claims where plaintiff failed to raise a minimal inference of discriminatory intent in not alleging "any detail about [plaintiff's] white peers, their academic and scholarship credentials, when they were granted tenure, or how the standards applied to [plaintiff's] application differed from those applied to his white peers"). Although Plaintiff has alleged that she is more qualified for the AD position than Ms. Parker—which, again, is at odds with the civil service exam results—Plaintiff has not alleged that Ms. Parker is *unqualified* for the position.

*Kouassi v. New York Department of Homeless Services* is instructive. There, plaintiff brought an ADEA claim and alleged, among other things, that defendant failed to promote him based on his age. 14-CV-7445 (RRM) (LB), 2017 WL 4342093, at *1 (E.D.N.Y. Sept. 25, 2017). In support of his claim, plaintiff alleged that defendant promoted younger individuals with less experience and less time on the job than him. *Id.* The plaintiff further alleged that he had an "outstanding work record" and "work ethic." *Id.* at *4. The court concluded, however, that such allegations did not amount to a plausible claim for relief, particularly because plaintiff "allege[d] nothing about the experience of the other individuals, their age, or any facts to suggest that his age was the cause for denying him a promotion." *Id.* Apart from the allegation of Ms. Parker's age, Plaintiff's conclusory allegations here are strikingly similar to those made by the plaintiff in *Kouassi*—Plaintiff avers that she was more qualified than Ms. Parker due to her tenure, experience, and familiarity with department policies and staff.[3] (DE 14 at 9.) Although couched as being

---

[3] Plaintiff's attempt to distinguish *Kouassi* is unpersuasive. Plaintiff urges that *Kouassi* is inapplicable here because (1) the complaint in that case contained less detail than the amended complaint here; and (2) the plaintiff there

11

in comparison to Ms. Parker, these allegations say nothing about Ms. Parker's qualifications for the position. Such conclusory allegations fail to give rise to an inference of discriminatory intent, particularly in light of the results of the civil service exam.

As such, Plaintiff has failed to raise a minimal inference of unlawful discrimination and has therefore not plausibly alleged her ADEA or ADA claims. Accordingly, the undersigned respectfully recommends that Defendants' motion to dismiss regarding Plaintiff's ADEA and ADA failure to promote claims be granted. However, in light of Plaintiff's request for leave to replead, the undersigned recommends that Plaintiff be afforded the opportunity to replead her claims and allege additional facts to raise a minimal inference of discrimination. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (noting that "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead" absent a showing of futility), *cert. den.*, 503 U.S. 960 (1992).

***Retaliation***

Both the ADEA and ADA prohibit employers from retaliating against employees for opposing unlawful discrimination. *Bernheim v. N.Y.C. Dep't of Educ.*, 19-CV-9723 (VEC) (JLC), 2021 WL 2619706, at *7, *10–11 (S.D.N.Y. June 25, 2021). As with discrimination claims, retaliation claims are analyzed under the *McDonnell Douglas* framework. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). A retaliation claim is adequately pled when a plaintiff alleges (1) that she participated in a protected activity; (2) that defendant knew about the protected activity; (3) the defendant took an employment action disadvantaging her; and (3) there is a causal connection between the protected activity and the adverse action. *Littlejohn¸* 795 F.3d at 315–16. The Second Circuit has held that a plaintiff's burden for establishing a *prima facie* case for retaliation is *de minimis*. *Duplan v. City of N.Y.*, 888 F.3d 612, 626

---

complained of "a situation in which there does not *appear* to have been a finite number of . . . promotions available." (DE 26-4 at 10–11 (emphasis added).) As to her first point, Plaintiff fails to observe the additional allegations asserted in *Kouassi*—such as his allegations about his "outstanding work record" and "work ethic"—as noted above. These allegations are similar in substance and in number to those included in the amended complaint here. As to her second point, Plaintiff speculates as to the number of promotions available in *Kouassi*. And although she is correct that a more palpable question of whether plaintiff's co-workers were "similarly situated" exited in *Kouassi*, Plaintiff's argument does not rectify the threadbare, conclusory allegations about her qualifications in contrast to Ms. Parker's here.

12

(2d Cir. 2018) (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)). The Court will discuss each element in turn.

### 1. Protected Activity Known to Defendants

"Protected activity" consists of filing a formal or informal complaint, including an EEOC charge, challenging discriminatory conduct. *Arroyo-Horne v. N.Y.C. Police Dep't*, 16-CV-03857 (MKB), 2016 WL 8711061, at *11 n.13 (E.D.N.Y. Dec. 9, 2016). Here, Plaintiff's retaliation claims stem from her filing of multiple EEOC charges and lawsuits against Defendant based on alleged discriminatory conduct. (DE 14 at 5–11.) Defendants do not dispute that these actions constitute protected activity under both the ADEA and ADA or that they were aware of these charges. Thus, Plaintiff has adequately alleged that she participated in a protected activity known to Defendants.

### 2. Disadvantageous Employment Action

In considering the alleged employment actions giving rise to a retaliation claim, courts have noted that "[t]he scope of actions that may be materially adverse is broader for purposes of retaliation claims than for discrimination claims." *Arroyo*-Horne, 2016 WL 8711061 at *12 (citing *Hicks*, 593 F.3d at 165); *see Cerni v. J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533, 539 (S.D.N.Y. 2016) ("The Supreme Court and Second Circuit have defined 'adverse action' for the purposes of [ADEA and ADA] retaliation claim[s] broadly."). Courts must therefore consider "whether the alleged adverse action to which the plaintiff was subjected could well have dissuaded a reasonable employee in [her] position from complaining of unlawful discrimination." *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 57 (S.D.N.Y. 2019) (internal quotation marks, brackets, and citation omitted); *see Cerni*, 208 F. Supp. 3d at 539 ("A plaintiff need only 'show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'") (citation omitted). Actions such as a failure to promote, a demotion, a downgrade in title, or a decrease in material responsibilities constitute materially adverse actions. *See Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) ("[Plaintiff's] claim of discriminatory failure to promote falls within the core activities encompassed by the term 'adverse actions.'") (citation omitted); *Kessler v.*

13

*Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 207 (2d Cir. 2006) ("Employment actions that have been deemed sufficiently disadvantageous to constitute an adverse employment action include 'a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'") (citation omitted).

Plaintiff has adequately alleged that Defendants took disadvantageous employment action against her, in response to her filed EEOC charges and lawsuits, by failing to promote her, demoting her, and moving her "to a more hazardous location." (DE 14 at 5–11.) In addition to earlier actions, Plaintiff alleges that she prevailed in an age and gender discrimination lawsuit against Defendants in 2015. (*Id.* at 6.) Plaintiff also alleges that she filed an EEOC complaint in 2017 after being denied a promotion to CSI III. (*Id.* at 7.) Despite eventually receiving the promotion, Plaintiff alleges that the delay resulted in a "significant salary decrease" for her. (*Id.*) Plaintiff adds that Defendants subsequently misrepresented the amount of time needed to work as a CSI III to apply for the AD position, and that the decision to deny Plaintiff the AD position after the civil service test was made in part by Mr. Broderick, who testified at Plaintiff's 2012 lawsuit against Defendants. (*Id.* at 9–10.) Finally, Plaintiff alleges that Defendants "reassigned and demoted" her unit in 2019, and that Defendants "moved [Plaintiff] to a more hazardous location" in June 2020, after the filing of the EEOC complaint leading to this lawsuit. (*Id.* at 10.) Considering these allegations in the aggregate, it is clear that Plaintiff has plausibly alleged that the adverse actions of failure to promote, reassignment, and demotion could dissuade a reasonable employee from complaining of unlawful discrimination.[4] *Zoulas*, 400 F. Supp. 3d at 57.

Thus, Plaintiff has adequately alleged that Defendants took disadvantageous employment action against Plaintiff in response to her prior complaints of discriminatory conduct.

---

[4] To the extent that Defendants' argument regarding Plaintiff's score on the civil service exam is aimed at the disadvantageous employment action prong of the retaliation analysis, that argument is better suited—and is there construed by the Court—as a causation argument.

14

### 3. <u>Causation</u>

Where the parties truly diverge on their view of the retaliation claim's viability is the issue of causation. Defendants contend that Plaintiff has not adequately alleged a causal connection between Plaintiff's discrimination complaints and the above-outlined adverse actions because (1) a more plausible explanation—the civil service exam results—exists to explain the failure to promote; (2) the time between Plaintiff's protected activity and the failure to promote is too long; and (3) Plaintiff, in any event, fails to establish "but-for" causation. (DE 26-3 at 16.) Plaintiff responds that her retaliation claim is adequately alleged because (1) Defendants are not entitled to rely on a more plausible alternative and, even if they were, they have failed to do so here; (2) she does not rely solely on temporal proximity in alleging Defendants' retaliatory conduct; and (3) "but for" causation is adequately pled. (DE 26-4 at 19.)

For a retaliation claim to withstand a motion to dismiss, the plaintiff must adequately plead causation, meaning that she "must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Duplan*, 888 F.3d at 625 (quoting *Vega*, 801 F.3d at 90) (internal quotation marks omitted). "'But-for' causation does not, however, require proof that retaliation was the *only* cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Vega*, 810 F.3d at 90–91 (internal quotation marks, brackets, and citation omitted and emphasis added). "'Causation may be shown by direct evidence of retaliatory animus *or* inferred through temporal proximity to the protected activity.'" *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 307 (2d Cir. 2021) (emphasis added) (quoting *Duplan*, 888 F.3d at 625).

Plaintiff has sufficiently alleged "but-for" causation in support of her retaliation claim. When considering the alleged facts as a whole, a "pattern of antagonism" arises between Plaintiff's 2015 trial against Defendants and the alleged failure to promote and other adverse actions complained of here. *Curio v. Roosevelt Union Free Sch. Dist.*, No. 10–CV–5612 (SJF)(AKT), 2012 WL 3646935, at *14 (E.D.N.Y. Aug. 22, 2012) (citing *Chan v. NYU Downtown Hosp.*, No. 03 Civ. 3003, 2004 WL 213024, at *3 (S.D.N.Y. Feb. 3, 2004)). Following the 2015 trial, Plaintiff alleges that she was passed over for the CSI III position once in 2015 and again in 2016. (DE 14 at 7.) This prompted Plaintiff to file an EEOC charge in 2017,

which led to Defendants' capitulation, promoting Plaintiff to CSI III, albeit with a reduced step and thus less pay than all other CSI III's due to the promotion delay. (*Id.*) When considering her application for the AD position in 2018—two years after her trial and only one year after her 2017 EEOC charge—Plaintiff alleges that Defendants misrepresented "that she needed to have been in her position as a CSI III for seven . . . years to qualify for" the position, despite this being untrue. (*Id.* at 8.) In 2019, Defendants then declined to interview Plaintiff for the AD position following the civil service exam, a decision that was allegedly made by Mr. Broderick, a witness at Plaintiff's 2015 trial. (*Id.* at 9.) Finally, Plaintiff has alleged "further adverse" acts following the circumstances surrounding the civil service exam, including an allegation that Plaintiff "was moved to a more hazardous location, against her will, for no reason" in June 2020, *after* she filed the EEOC charge tethered to this case in May 2020. (*Id.* at 10; *see* DE 14-1 at 4.) These "allegations establish a drumbeat of retaliatory animus"—with an alleged discrete retaliatory act occurring each year since Plaintiff's 2015 trial—from "which a plausible inference of causation can be drawn." *Duplan*, 888 F.3d at 626.

Defendants' arguments to the contrary are unpersuasive. Defendants' contention that Plaintiff's promotion in 2018, as well as Ms. Parker's high mark on the civil service test, break the chain of causation ignores the principle that "but-for" causation does not demand that the pleadings reflect that retaliation was the *only* cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive. *Vega*, 810 F.3d at 90–91. Moreover, Plaintiff adequately alleges that, although Defendants promoted her in 2018, that promotion was somewhat of an empty gesture given that Plaintiff's paygrade was less than all other CSI IIIs. Next, Defendants' temporal proximity argument—as Plaintiff correctly highlights—disregards that Plaintiff's allegations are rooted in retaliatory animus rather than an inference of retaliation based on the gap of time between the 2015 lawsuit and Defendants' alleged failure to promote.[5] *See Duplan*, 888 F.3d at 625. And, as explained above, Plaintiff's allegations, taken

---

[5] This argument additionally pays no credence to the alleged June 2020 retaliation in moving Plaintiff to a more hazardous location in response to her filing of the EEOC charge relevant to this case on May 7, 2020. If considered in a vacuum, this alleged retaliation undeniably occurred close enough in time to Plaintiff's protected activity to infer

16

as true, establish a retaliatory pattern sufficient to survive dismissal, undercutting Defendants' contention that Plaintiff has failed to properly allege "but-for" causation.

Thus, Plaintiff has adequately alleged the causation prong of her retaliation claim.

\* \* \*

In sum, Plaintiff has met her burden in alleging facts to support her ADEA and ADA retaliation claims. *Duplan*, 888 F.3d at 626. The undersigned therefore respectfully recommends that Defendants' motion to dismiss Plaintiff's timely retaliation claims be denied.

*NYHRL Claims*

Finally, Defendants assert—as their only ground for dismissal of Plaintiff's NYHRL claims—that Plaintiff fails to state a claim under the NYHRL because the doctrine of *respondeat superior* is not available for such claims. (DE 26-3 at 18.) Plaintiff retorts by explaining that "she alleges a series of tangible adverse employment actions, which by definition are actions done by the employer" and therefore do not implicate the principle of *respondeat superior.* (DE 26-4 at 22.)

The NYHRL states, in pertinent part, that is shall be unlawful

(a)     [f]or an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, gender identity or expression, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic violence, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment[;]

In other words, an employer may be held liable for age and disability discrimination under the NYHRL for adverse employment decisions. *See, e.g.*, *Dressler v. N.Y.C. Dep't of Educ.*, No. 10 Civ. 3769(JPO), 2012 WL 1038600 (S.D.N.Y. Mar. 29, 2012) (discussing NYHRL claims against employer for termination and retaliation based on age discrimination); *Hamburg v. N.Y. Univ. Sch. of Med.*, 155 A.D.3d 66, 62 N.Y.S.3d 26 (2d Dep't 2017) (NYHRL claim against defendant employer for firing based on age discrimination); *Hanna v. N.Y. Hotel Trades Council*, 851 N.Y.S.2d 818, 825, 18 Misc.3d 436, 443 (N.Y.

---

causation. *See, e.g.*, *Bowen-Hooks v. City of N.Y.*, 13 F. Supp. 3d 179, 231 (E.D.N.Y. 2014) (finding one month time lapse between protected activity and adverse action sufficient to establish *prima facie* causation).

Cnty. Sup. Ct. 2007) ("It is well established that less severe actions [by an employer], such as refusal to promote, may also be deemed an adverse employment action."). NYHRL does, however, generally proscribe employer liability on the basis of *respondeat superior* when the alleged discrimination is conducted by an employee. *E.E.O.C. v. Mavis Discount Tire*, No. 12 Civ. 0741(KPF), 2013 WL 5434155, at *6 (S.D.N.Y. Sept. 30, 2013). In such cases, an employer may only be held liable for an employee's discriminatory conduct if it became a party by encouraging, condoning, or approving the conduct. *Figueroa v. N.Y. State Div. of Human Rights*, 142 A.D.3d 1316, 1317, 38 N.Y.S.3d 857, 859 (4th Dep't 2016).

Here, Plaintiff does not rely on a theory of *respondeat superior*. Rather than allege that the discriminatory conduct came from lower-level, individual employees, Plaintiff alleges throughout the amended complaint that Defendants—"the County"—took the adverse employment actions against her. (*See* DE 14.) Moreover, the few allegations that concern individual employees—such as Mr. Broderick, Defendants' Deputy Services Commissioner—concern employees who occupy high-level, managerial positions and thus are capable of binding Defendants without the invocation of *respondeat superior*. *See Father Belle Cmty. Ctr. v. N.Y. State. Div. of Human Rights on Compl. of King*, 221 A.D.2d 44, 54, 642 N.Y.S.2d 739, 746–47 (4th Dep't 1996) ("[W]e hold that the corporate employer may be held directly liable for acts of discrimination perpetrated by a high-level managerial employee."). Thus, Plaintiff has adequately alleged her NYHRL claims.

Accordingly, the undersigned respectfully recommends that Defendants' motion to dismiss Plaintiff's NYHRL claims be denied.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the undersigned respectfully recommends that Defendants' motion to dismiss (1) be granted as to each of Plaintiff's ADEA and ADA claims accruing prior to July 13, 2019; (2) be granted as to Plaintiff's ADEA and ADA overtime claims; (3) be granted as to Plaintiff's ADEA and ADA failure to promote claims; (4) be denied as to Plaintiff's timely ADEA and ADA retaliation claims; and (5) be denied as to Plaintiff's NYHRL claims. The undersigned additionally recommends that Plaintiff

be granted leave to replead her ADEA and ADA failure to promote claims and denied leave to replead her ADEA and ADA claims accruing prior to July 13, 2019 and her overtime claims.

## VI. OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated: Central Islip, New York
       January 28, 2022

/s/ *James M. Wicks*
    JAMES M. WICKS
United States Magistrate Judge